## REYNOLDS, AUDITOR, *vs.* TAYLOR.

[MANDAMUS, TO COMPEL AUDITOR TO DRAW WARRANT ON TREASURER, FOR PAY-
MENT OF SALARY OF PUBLIC OFFICER.]

1. *Mandamus ; when lies.*—A mandamus is the proper remedy to compel
the auditor to issue his warrant on the treasurer, for the payment of
the salary of public officers.

2. *Salary of public officer ; when annual appropriation, not necessary to au-
thorize payment of.*—If the salary of a public officer is fixed, and the
times of payment prescribed by law, no special annual appropriation is
necessary to authorize the auditor to issue his warrant for its payment.

3. *Rebel legislature; what acts of, are valid and subsisting laws of this State.*
Such acts of the rebel legislature as are not in conflict with the con-
stitution and laws of the United States, or the constitution of this State,
and not inconsistent with the changed and altered state of our institu-
tions, (although passed by an unlawful legislature,) having been
adopted into the Revised Code by the legislature of the present gov-
ernment, since its restoration, and declared to be in full force and ef-
fect, the courts are bound to conform to the will of the legislative de-
partment of the government, and to recognize them as valid and sub-
sisting laws of this State.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JAMES Q. SMITH.

THIS was an appeal, by R. M. Reynolds, auditor, &c.,
from a peremptory *mandamus*, issued to him by the circuit
court of Montgomery, commanding him to draw his war-
rant on the State treasurer for the balance of salary due
H. L. Taylor, late marshal of the supreme court, and *ex
officio* librarian, &c. The facts upon which the case turns,
are fully set out in the opinion of the court.

JOSHUA MORSE, Attorney-General, for appellant.—The
petition is demurrable, because it does not show that the
petitioner took all the legal steps, and complied with all the
requisitions of law, necessary to entitle him to have his
claims audited, and to entitle him to a warrant for the
money. The petitioner must bring himself within the

Reynolds, Auditor, v. Taylor.

strictest rules of law, to entitle him to relief, by an order of the court, against a co-ordinate branch of the government. Revised Code, §§ 414, (7th par.) 418, 421, 4436.

2d. Because it does not show that an appropriation has been made by law for the payment of this claim, at the rate charged by the complainant, that is, for the fiscal year ending September 30, 1868.—Constitution, article 4, § 31 ; Act of Assembly, August, 1868, and the act making appropriations for the year ending September 30, 1868, passed February, 1867 ; see Pamphlet Acts.

3d. Because there is no law authorizing the payment of this claim. The government, under which and by which the salary of $2,000 was fixed, was not even a *de-facto* government, and its laws, therefore, have no effect.—*Coleman v. Chisholm*, in manuscript ; see opinions in case of *Ragland v. The State.*

Special plea and amendment of answers, showing—1st. That no appropriation has been made ;  2d. The plea to show that the men who passed the law of 1864 did not take an oath to support the constitution of the United States, as required by the constitution of Alabama, as it was before the war, and they were, therefore, not a legal body of men.

The petitioner must show that he complied with the constitution of Alabama, by taking the official oath of office.

The act making the appropriation of $1,000, as the pay of the marshal, operates the repeal of the section giving him $2,000.

If the act had increased the salary, it would not have been repugnant, and both acts could stand ; but it diminishes the salary, and therefore repeals the previous act.

S. F. RICE, and E. PHELAN, for appellee.—The marshal of the supreme court is appointed by the judges of the court, and is *ex officio* librarian.—Revised Code, §§ 670, 671 ; see, also, §§ 673, 674.

Section 665 is as follows : " The annual salary of such marshal is two thousand dollars." This was the law of the State of Alabama when Mr. Taylor was appointed marshal of the supreme court, on the 8th day of January, 1867, and continued to be the law of the State up to the time he

ceased to be marshal, on the 21st July, 1868, and continues to be the law of the State to the present day, having never been changed or modified in any manner; the Revised Code having been adopted as the law of the present government by act of 1868.

Section 210 of the Revised Code provides, " that the salaries of all officers are payable on the last day of each month."

The duties of the comptroller, or auditor, are found in article 1, chapter 1, page 160, Revised Code.

1. The point most relied on by the attorney-general, in his argument to the court below, will have to be abandoned, since the promulgation of the able opinion of Chief-Justice PECK, delivered upon the motion in the *Hoffman-Stoudenmire* case, at the present term. The point was, that the petitioner was an officer of a government not recognized by the present government of Alabama, having been appointed to the office of marshal by Judges Walker, Byrd and Judge, who were not judges of the supreme court of Alabama. The opinion above referred to, holds adversely to the view taken by the attorney-general in the court below, and settles this point.

2. The second ground relied on by the appellant, to defeat the claim of the appellee, is, that there is no appropriation by law to pay said petitioner his salary of two thousand dollars annually. By the appropriation acts of 1865-6, and 1866-7, (Sess. Acts, 1865-6, p. 78 ; 1866-7, p. 640,) only one thousand dollars was appropriated to pay the salary of the marshal of the supreme court. It is to be presumed that " one thousand dollars" was inserted in these acts by mistake, for it would be unreasonable to suppose that the legislature would fix an officer's salary at $2,000, and strive to prevent him from receiving his just reward for his services by such an evasive course. It was a mistake, and nothing more; such a mistake as occurs annually in legislative bodies, especially in the appropriation bills, which, being passed on the last day of the session, do not receive that careful attention the other bills do. This was the ground upon which Mr. Chisholm, the former comptroller, based his refusal to pay Mr. Taylor his salary of

two thousand dollars per annum ; and he supposed he was authorized to take this position by the clause of the constitution, article 4, § 37, Revised Code, 39, which is as follows : " No money shall be drawn from the treasury, but in pursuance of an appropriation made by law." \* \* \* A similar clause is found in the constitution of 1819, and of 1867, and also in the constitution of the United States. This is one of the grounds upon which the auditor refuses to audit and adjust the claim of the petitioner.

We contend that there was " an appropriation made by law" to pay the salary of Mr. Taylor. The law says, " the annual salary of such marshal is two thousand dollars," and that it is payable on the last day of the month ; there is no ambiguity or doubt as to the intention of the legislature. " What could have been the purpose of the clause in the constitution to which we have referred ? It was obviously inserted to prevent the expenditure of the people's treasure, *without their consent*, either as expressed by themselves, in the organic law, or by their representatives, in constitutional acts of legislation. To use the language of Justice Story, (3 vol. Com. on Con. § 1342,) its purpose is to secure regularity, punctuality and fidelity in the disbursements of the public money ; and as said by Judge Tucker, in his Commentaries, (1 Tucker's Bla. Appendix, 362): "All the expenses of government being paid by the people, it is the right of the people not only not to be taxed without their own consent, or that of their representatives, freely chosen, but also to be actually consulted upon the disposal of the money." These being the purposes and objects of the clause, the question is, have the people given their consent to the payment of the salary of *the marshal?* That they have done so, is palpably manifest. They have said, " the annual salary of such marshal is two thousand dollars." It is impossible for human language to be less ambiguous. The people, by a constitutional act of their legislature, have given their consent that the marshal of the supreme court is to receive an annual salary of two thousand dollars. How is their will obeyed, if it be within the power of the comptroller, or any one else, to withhold it from caprice, unfaithfulness to duty, or from mistaken judg-

ment? To allow of such a power in that officer, would be
to put him above the law. It would be to invest him with
authority to annul the legislative will; in fact, to stop the
wheels of government, and reduce things to the wildest
confusion. The law has said the officer's "annual salary
is two thousand dollars," and this expression of the legis-
lative will is not to be nullified by the mere *ipse dixit* of a
mere *ministerial* officer; for such and none other is the
comptroller."

The above quotation is taken, with some slight changes
to suit the case in hand, from the able opinion of Chief-
Justice LeGrand, delivered in the case of *Philip Francis
Thomas, Comptroller, v. J. S. Owens, Treasurer*, 4 Maryland
Rep. 189.

The question, whether it required an appropriation by
the legislature to authorize the ·payment of a salaried offi-
cer, whose salary was fixed by the constitution, was ably
argued and decided. One of the head-notes to said case
is as follows : "The constitution *proprio vigore* makes the
appropriation for the payment of the salaries fixed in it,
by declaring the amount "shall " be "received" by the
particular officer; this is an appropriation *by law*, by the
*supreme law* of the State, and no legislative act making ap-
propriations for such salaries is necessary."

But this question has long been settled in this State. In
the case of *Nichols v. Comptroller*, (4 Stew. & P. 157,) the
point arose and was decided. This has been the law of
the State for now over thirty-five years, and has been a
guide to the comptroller for that great period of time.

The court in that case say : "It is conceded, that no
money can be drawn from the treasury but in pursuance of
an appropriation made by law; but it is not necessary that
there should be an act passed annually for the appropria-
tion. If there is a general law fixing the salary, requiring
it to be paid at the treasury annually, or quarter-annually,
this is sufficient."

This is "*all fours*" with the case at bar; here there is a
general law fixing the salary, and requiring it to be paid on
the last day of each month.

The judgment of the court below will have to be affirmed,

or the case of *Nichols v. Comptroller, supra,* will have to be overruled. It has been too long the law of the commonwealth for this to be done now, founded as it is in the soundest reason and authority.

The principle has been so well settled in this State, that a *mandamus* will lie in such a case as the one at bar, that we have thought it useless to cite authorities to sustain the point.

3. The law of the State gave Mr. Taylor $2,000 annual salary. This was a contract on the part of the State, and was a guarantee that that amount should be paid its servant and employee.

Suppose a corporation should employ an officer, and contract to pay him an annual salary of $2,000, to be paid at the end of each month, and when this officer demands his salary, he is told by the auditor of the company that the company has only appropriated $1,000 to pay his salary, and that he must receive that amount or starve. Would this be upheld by the courts? If so, the head-note would be about thus: A company employs B as conductor, and agrees to pay him an annual salary of $2,000, payable monthly; the company only appropriate $1,000 to pay B's salary,—*held,* that B can only receive $1,000.

The proposition needs only to be stated to show its absurdity.

In prescribing the duties of the comptroller, (now called auditor,) the Revised Code makes a clear distinction between "the accounts of public officers" and "the claims" of persons, or mere unofficial individuals, "against the State."

As to the former, the duty of the auditor is, to "audit and adjust;" as to the latter, his duty is to "examine and adjust."—Revised Code, § 414, par. 6-7. As to the former, no affidavit or oath is, or ever has been, required, either in law or in fact; as to the latter, an affidavit is required.—Revised Code, § 421.

If an oath or affidavit can be required of any public officer, it can be required of every public officer—governor, supreme and circuit court judges, chancellors, &c. This is unheard of. Besides, there is no reason for it; because by

public law, of which the auditor is charged with knowledge, the rate of the compensation is fixed ; and as he must audit and adjust all such accounts, he is charged by law with knowing, from his books and acts, what is paid, and what unpaid.

We respectfully submit that ten per cent. damages ought to be awarded on the affirmance. The law seems to us clear to that effect.

Where the express requisition is, that a certain proportion of each house, (say two-thirds) voting by yeas and nays, is essential to the passage of a bill, the failure to show that the yeas and nays were taken is a fatal objection to the bill.

But where the requisition is no more than that a certain proportion of each house is required to pass the bill, if the journal of each house shows that the bill passed, the courts are bound to indulge the presumption, that the required number of each house voted for the bill; otherwise, the journal would be false ; for if that number did not vote for it, the truth would be that it did not pass. In such case, the maxim, " *rite esse acta omnia præsumuntur*," applies with full force, as it always must apply to sworn public officers, in the absence of an imperious exclusion of it, by an explicit provision.

The journal of each house shows that the bill " to continue in force certain laws," passed each house.—Senate Journal, 1868, pp. 52, 53 ; House Journal, 1868, p. 59.

Neither the ordinance of 1867, numbered 35, (Pamphlet Acts, 1868, p. 183,) nor the constitution, makes a vote by yeas and nays essential to the repeal of an ordinance.

Hence, the act entitled " An act to continue in force certain laws," approved July 29, 1868, (Pamph. Acts of 1868, p. 7,) repeals said ordinance numbered 39, and made ten per cent. the rule of damages on the affirmance of a judgment by the supreme court, which had been superseded.— Revised Code, § 3500 ; Pamph. Acts, 1868, p. 410. Especially as to appeals with *supersedeas*, like the present, which were never authorized until long after the Revised Code had been thus adopted.—*Ex parte Floyd*, 40 Ala. 116.

This last cited case establishes, that until the act set

Reynolds, Auditor, v. Taylor.

forth in Pamph. Acts of 1868, p. 410, was passed, the auditor could not have appealed and superseded the judgment in this case ; for until that act, there was no law authorizing any such appeal and *supersedeas.*

The damages are given because of the *supersedeas*—the delay it occasions.—*Crawford v. Hines,* 2 Ala. 531.

PECK, C. J.—The record in this case shows that the appellee, on the 8th day of January, 1867, was duly and legally appointed marshal of the supreme court of Alabama, and was, by virtue of said appointment, *ex officio* librarian of the State and supreme court libraries.

The record further shows that he was a person competent to be so appointed, and to hold and enjoy said office ; that he qualified, took the oath, and gave the bond required by law, and on the said 8th day of January, 1867, entered upon the discharge of the duties of his said office, and from that day, and until, and up to the 21st day of July, 1868, and including that day, performed the duties of said office.

The record also shows that during that period, he had been paid by the treasurer of the State, on the warrants of the late comptroller, and the present auditor of the State, the said R. M. Reynolds, on account of his annual salary, the sum of fifteen hundred and thirty-four dollars and eighty-nine cents ; that these warrants were drawn as aforesaid, estimating his salary at the sum of one thousand dollars annually, and no more ; that appellee, when said warrants were drawn, claimed that he was legally entitled to a salary, as such marshal and librarian, of two thousand dollars annually, instead of one thousand dollars, and that he had requested said comptroller and auditor to draw their warrants accordingly, but they had refused to do so ; that he had received the warrants so drawn, as aforesaid, under protest, and without in any manner waiving his right to be paid the entire amount of the salary, claimed by him as aforesaid.

The record also further shows that, estimating the salary of said appellee at the sum of two, instead of one, thousand dollars annually, he was entitled to receive, in addi-

tion to the amount already received, &c., as aforesaid, the sum of fifteen hundred and thirty-four dollars and eighty-nine cents; and that, to-wit, in the latter part of January, of this present year, 1869, said appellee had demanded of appellant, the said R. M. Reynolds, auditor, &c., as aforesaid, to audit and adjust his account for salary or compensation, due to him as marshal and librarian, &c., as aforesaid, and also demanded of him a warrant on the treasurer of the State, for the payment of the same. The auditor refused to do this, and thereupon appellee filed his petition in the circuit court of Montgomery county, in which the foregoing facts were stated, with others not necessary here to be set forth, and prayed that the writ of *mandamus*, or other appropriate writ, be issued, or the proper order be made, to compel the said auditor, said R. M. Reynolds, to audit and adjust petitioner's account for salary or compensation, as marshal, &c., as aforesaid, and to issue his warrant on the treasurer of the State of Alabama, in favor of petitioner, for the amount of compensation or salary to which he was entitled by the laws of the State. Upon the facts therein alleged and set forth, he also prayed for every other order or writ, or process, and for all other relief to which he was entitled, &c.

Upon the filing of said petition, the said court ordered that a rule issue to the said R. M. Reynolds, auditor, &c., as aforesaid, citing and requiring him to appear before the said court on the fourth day of February, 1869, to show cause why a *mandamus* should not be issued, as prayed for in said petition. This rule was duly served on said auditor, and returned to said court.

To this rule, the said auditor, by the attorney-general, appeared and filed his demurrer. No grounds for the said demurrer appear in the transcript, though it is stated, they were filed and made a part of the record. The transcript states that it was agreed, if the demurrer was over-ruled, final judgment was to be rendered against said auditor by the court, reserving to him, in that event, the right to appeal to the supreme court. The petitioner joined in this demurrer.

The transcript sets out an answer of the said auditor, in

the words following, to-wit : " For answer to the foregoing petition, the auditor, R. M. Reynolds, denies the legality and validity of the claim set up by the petition. There is no law, in his opinion, authorizing payment of the same, and the precedents established in this office do not warrant the payment thereof.

"The fact of the appointment of the petitioner, by Judges Walker, Byrd and Judge, as marshal and librarian, and his services as such, and the former payments to him, and the refusal of the auditor to issue a warrant for the claims, are admitted to be true, as they are alleged in the petition.

(Signed,)                                R. M. REYNOLDS."

No notice seems to have been taken of this answer in the further proceedings of this case.

The demurrer to said petition was overruled, and a peremptory *mandamus* ordered to be, and was, issued, commanding the said auditor, said R. M. Reynolds, to draw his warrant on the treasurer in favor of said petitioner, said appellee, for whatever sum remained due to him, as marshal and librarian, as alleged in his petition, from the said 8th day of January, 1867, to and including the 21st day of July, 1868, computing petitioner's salary for that period, at the rate of two thousand dollars per annum ; and it was also ordered that said petitioner recover of said R. M. Reynolds the costs in that behalf expended, &c.

On this final order and judgment of the court, the said auditor has appealed to this court. He excepted to the judgment of the court, and a bill of exceptions was signed and sealed at his instance, merely setting out the matters before admitted, &c.

The errors assigned are—1st. The court erred in overruling the demurrer to the petition.

2d. The court erred in rendering judgment, and directing a peremptory *mandamus* to issue against the auditor.

Section 2656 of the Revised Code says : " No demurrer in pleading can be allowed, but to matter of substance, which the party demurring specifies, and no objection can be taken or allowed which is not distinctly stated in the demurrer."

The error assigned upon the overruling of the demurrer cannot properly be considered, because no objection, for either matter of substance, or form even, is specified ; and no objection can be allowed which is not stated in the demurrer. We have, notwithstanding, examined the petition carefully, and are unable to discover any substantial objection to it. If any such objection appeared, we would give the appellant the benefit of it, considering the circumstances of the case, and the character of the proceedings.

The attorney-general, for the appellant, insists, that the appellee is not entitled to the relief he seeks, unless he has complied with all the requisitions of the law, necessary to have his claim audited, and a warrant on the treasurer for the payment of the same, and he refers to the 7th part of section 414 of the Revised Code, and also to section 4436. The 7th part of section 414 makes it the duty of the comptroller (the auditor now) to examine and adjust the claims of all persons against the State, where provision for payment thereof has been made by law. This manifestly refers to special claims against the State, and does not refer to the salaries of public officers, where not only the amount, but the time of payment is determined by the general law ; and section 4436 refers to the allowance of special claims against the State, by the legislature, and the evidence to be required in such cases.

2. He insists that the application of appellee should be denied, because it is not shown that an appropriation had been made to pay his salary, as marshal, &c., at the sum claimed by him ; but that appropriations had been made to pay him one thousand dollars salary per annum only, and not two thousand·dollars as claimed. We know that the general appropriation acts of 1866 and 1867, appropriated one thousand dollars only, for the payment of the salary of the marshal of the supreme court. This objection is sufficiently answered, by a decision of this court, made more than thirty years ago. In the case of *Nichols v. The Comptroller*, 4 Stewart & Porter, 154, it is decided, that in order to authorize the comptroller to issue his warrant on the treasury, for the amount of a salary, it is not necessary that there should be a special annual appropriation by act

of the legislature, where there is a general law fixing the amount of the salary, and prescribing its payment at particular periods."

We are not aware that this decision has been doubted from that day to the present time. It is, therefore, the law of this court. That case also decides that a *mandamus* lies against an officer of the executive department, to compel the performance of his duty. It also decides that a *mandamus* will go to the comptroller of public accounts, to compel the issuance of a warrant on the treasury, where the right to such warrant is clear, and no other remedy is provided. Is the right of the appellee in this case clear? Was he, as marshal of this court, and librarian *ex officio*, of the libraries of the State, and of this court, entitled to a salary of two thousand dollars annually, instead of one? If so, then it was, and is, the duty of the comptroller and auditor to issue warrants on the treasurer accordingly.

Section 670 of the Revised Code says, a marshal of the supreme court must be appointed by the judges of said court, and section 675 declares "the annual salary of such marshal is two thousand dollars;" and, further, section 210 says : "The salaries of all officers are payable on the last day of each month;" that is, the salaries of all public officers are payable monthly.

But it is insisted, on behalf of the appellant, that "the government under which, and by which, the salary of two thousand dollars was fixed, was not even a *de-facto* government, and its laws, therefore, have no effect;" that is, that section 675 of the Revised Code was passed by the legislature of the rebel government, in the year 1864, during the flagrancy of the late rebellion, and, therefore, has no legal validity, and the case of *Chisholm, Comptroller, &c., v. Augustus A. Coleman,* is referred to. That decision was made after mature consideration; and we are entirely satisfied with it, but we do not see what influence it can have on this case. In that case, we held, "That the so-called Confederate government, and the rebel government, in the State of Alabama, were neither of them, in the legal proper sense, *de-facto* governments, during the late rebellion." We also held said governments to be rebel governments—

governments in hostility to the government of the United States—consequently, the legislature in this State, during the existence of the rebellion, was an unlawful legislature, and its acts unlawful acts, and must so be regarded by the courts of the lawful State government, since its restoration and reconstruction. Yet, it does not follow, that the legislature of this State, after its restoration, may not adopt and give validity to such of the legislative acts of said unlawful government, as are not in conflict with the constitution and laws of the United States, or the constitution of this State, and are not inconsistent with the changed and altered condition of our institutions.

Such we understand to be the view taken of this question by the supreme court of the United States, in the case of the *State of Texas v. Chiles*. In that case, Chief-Justice Chase, in speaking of an act of the legislature of the State of Texas, during the rebellion, repealing an act of said State, passed before the rebellion, prescribing the manner in which certain government bonds belonging to said State, might be disposed of, says: " The legislature of Texas, at the time of the repeal, constituted one of the departments of a State governent, established in hostility to the constitution of the United States. It can not be regarded, therefore, in the courts of the United States, as a lawful legislature, or, its acts as lawful acts. And, yet, it is a historical fact, that the government of Texas, then in full control of the State, was its only actual government; and certainly, if Texas had been a separate State, and not one of the United States, the new government having displaced the regular authority, and having established itself in the customary seats of power, in the exercise of the ordinary functions of administration, would have constituted, in the strictest sense of the words, a *de-facto* government, and its acts during the period of its existence, as such, would be effectual, and almost in all respects valid ; and, to some extent, this is true of the actual government of Texas, though unlawful and revolutionary as to the United States."

The chief-justice proceeds further to say, " It is not necessary to attempt any exact definitions, within which the act of such a State government must be treated as valid

Reynolds, Auditor, v. Taylor.

or invalid. It may be said, perhaps, with sufficient accuracy, that acts necessary to peace and good order among citizens—such, for example, as acts, sanctioning and protecting marriage, and the domestic relations, governing the course of descent, regulating the conveyance and transfer of property, real and personal, and providing remedies for injuries to person and estate, and other similar acts which would be valid, if emanating from a lawful government, must be regarded in general, as valid, when proceeding from the actual, though unlawful government; and that acts in furtherance or support of rebellion against the United States, or intended to defraud the just rights of citizens, and other acts of like nature, must, in general, be regarded as invalid and void."

This we think a very wise and just view of this embarrassing question; and this is substantially the view that has been taken of it by the State of Alabama. The legislature, the political department of the State, has adopted and given validity to such of the acts of the legislature of the rebel government, as are not in conflict with either the constitution of the United States, or of this State, or inconsistent with the changed and altered condition of the country. This has been done by embracing them in the Revised Code of the State, and, then, by direct enactment, after the adoption of the said Code. By an act entitled "An act to continue in force certain laws," approved July the 29th, 1868, it is enacted, " That all laws and parts of laws of the Revised Code of Alabama, except such as conflict with the constitution of the United States, or the constitution of this State, be and the same are hereby declared to be in full force and effect, until repealed by this or some succeeding legislature."

The laws embraced in the Revised Code, consist of laws that were in the old Code, laws passed during the rebellion, and laws passed since the rebellion and before the said Code was finally completed and adopted, and all alike, with the exception of those in conflict with the constitution and laws of the United States, or the constitution of this State, are declared to be in full force and effect.

28

This adoption being the act of the political department of the government, the legislature, the courts, we hold, are bound to conform to it.

If these views are correct, as we believe them to be, it follows, that the salary of the marshal of this court, during the period the appellee held the office, was two thousand dollars, for, so it is. expressly declared by said section 675 of the Revised Code; and it makes no difference that it was embraced in an act passed by the legislature of the rebel government; being embraced in the said Code, and adopted, as we have shown, by the present State government, it is as valid as any other section in the Code.

Therefore, the appellee having received only half of the salary to which he was entitled, and the auditor having refused, although requested, to draw his warrant for the payment of the remainder, the court below decided right in directing a peremptory *mandamus* to issue.

Let the judgment of the court below be affirmed, at the appellant's costs.