40 So.2d 417

## EAGERTON v. GRAVES.

### 3 Div. 529.

Supreme Court of Alabama.
April 28, 1949.

Rehearing Denied May 26, 1949.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for appellants.

328

Steiner, Crum & Weil and Files Crenshaw, all of Montgomery, for appellee.

FOSTER, Justice.

The question on this appeal is whether or not the provision in the General Appropriation Act of 1947, General Acts 1947, page 183, at page 197, for "Temporary Clerk Fund $3,500.00" is a limitation on the amount which may be expended under Title 55, section 175, Code, during the period of that Act—the two fiscal years ending respectively September 30, 1948 and September 30, 1949. There is no law which sets up a temporary clerk fund.

Title 55, section 175, Code of Alabama, is a very old statute, enacted in somewhat similar form in 1867, and retained in the several codes since then. It provides for the employment of clerical assistance in addition to that prescribed by law in any of the State offices or departments by order of the governor on the certificate of the head of the office or department, "for such time as he (the governor) may deem necessary". It is not specifically provided that ony one can fix the salary of such clerks. But it provides that their compensation must be paid as the salaries of other State employees upon account stated, certified by the head of the proper office or department, and approved by the governor, upon the warrant of the comptroller out of any money in the treasury.

Section 71 of the Constitution provides that the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the State, interest on the public debt and for public schools; and that no appropriation shall be made in it for an employee unless his employment and the amount of his salary have already been provided for by law.

The broad question may be broken down into two parts: (1) Is the temporary clerk fund as set up in the Act for the ordinary expenses of one of those departments of the State, since it has no reference to interest on the public debt, nor to the public schools? (2) If it is thereby properly included in the appropriation bill provided for in section 71 of the Constitution, does it serve to fix a limitation on section 175, Title 55, supra?

■ We think that expenditures under section 175, Title 55, Code, are for such ordinary expenses as are within the terms of section 71 of the Constitution, so as to be subject to inclusion in the general appropriation bill. Therefore section 45 of the Constitution has no application.

What then is the effect of the $3,500 appropriation? That appropriation is for the "Temporary Clerk Fund", which has no legal existence in point of fact as a fund. Under section 175, Title 55, supra, the clerk hire is payable out of the general treasury.

Such clerk hire is temporary. There is nothing else in our statutes which looks more like a temporary clerk provision. It is there set up as a provision for additional clerks to be employed for such time as may be deemed necessary by the governor and head of the department. So that we have provision for temporary clerks whose salaries are, we think, a part of the ordinary expenses of the State government.

Under section 71, supra, no appropriation may be made for them unless their employment and amount of their salary have already been provided for by law. There is no express provision of law fixing the amount of their salaries. But section 71, supra, does not require that this be done by law, but only that provision for it be made by law.

■ It is our view that section 175, Title 55 makes such provision for their employment and for their salary by the cooperation of the head of the department and the governor complying with the requirements there expressed. We are also of the opinion that the statute is an appropriation out of the State treasury of an amount necessary to pay those salaries. Riggs v. Brewer, 64 Ala. 282; Reynolds v. Taylor, 43 Ala. 420. It need not be of a definite amount. State, ex rel. Turner v. Henderson, Governor, 199 Ala. 244, 74 So. 344, L.R.A. 1917F, 770.

There was then existing no status to which this appropriation could apply except as provided in section 175, Title 55, Code. And the legislature has not set up a new status to which it might apply.

That statute has existed from our early history, and it has not been pointed out to us where there was ever a limitation on the amount so provided.

In the case of Reynolds v. Taylor, supra, the salary fixed by statute was $2,000. But the appropriation was only for $1,000. The Court held that the appropriation did not cut down the salary fixed by statute. There was nothing else to which it could refer but the salary of a certain officer.

In the case of Riggs v. Brewer, supra, there was a statute fixing an officer's salary. The appropriation bill made an appropriation for the salary in an amount less than that fixed by law. The Court noted that merely appropriating a less sum than that fixed by the statute would not operate to repeal by implication the statute. That is, we judge, to fix an amount different from that set up in the statute. But the Court held that there were other indications in the appropriation act which showed a legislative purpose to make a change in the compensation of the officer, since it manifestly and plainly intended to prescribe the only rule that should govern in reference to the particular matter.

There is nothing in the instant appropriation to shed light on the intention of the legislature as to the meaning of it. There are other appropriations in the general act which refer to certain sections of the Code or Constitution as being the basis of its operation

The appropriation of $100,000 for the governor's emergency fund is declared to be the appropriation contemplated in section 105, Title 55, Code, and to be the total amount expended under the provisions of said section. No such provision is contained in the appropriation for temporary clerks.

In Opinions of the Justices, 237 Ala. 377, 186 So. 731, it was thought by the justices that when an act provides for the manner of fixing salaries without appropriation in terms or effect, the act would not stand under section 72 of the Constitution. But that is not the status of section 175, Title 55, supra.

But it is insisted that the report of the interim committee on finance and taxation has a bearing on the legislative intention. It is as follows:

"Temporary Clerk Hire.

"In considering an appropriation for temporary clerk hire, the committee referred to section 175 of Title 55, which section authorizes the employment of temporary clerks. In studying that section of the Code, the committee discovered that said section has been construed as providing for a continuing appropriation, without limit, to pay temporary clerks employed and that it was very doubtful as to whether or not any such clerks employed would come through the State Merit System. The committee decided that such procedure in respect to temporary clerks was unsound and recommends, therefore, that section 175 of Title 55 be amended to provide that any expenditures thereunder should be limited to an amount budgeted from time to time for that purpose in general appropriation bills and that such employees should be employed under the provisions of the Merit System." Reports of Interim Committees, Legislative Document No. 4 of the Regular Session for 1947, page 32.

■ There has been no amendment of section 175, supra, as suggested by this report. To carry out the purpose of such report, an amendment of that statute was contemplated in connection with an appropriation referring to it. In making the report the committee observed the propriety of both steps in the process. The appropriation, even if it refers to section 175, supra, without the proposed amendment, was not a completion of the program of the committee. If the legislature intended to make the appropriation have the effect suggested without the amendment of section 175, supra, and without the appropriation referring to section 175, it should plainly so appear.

■ This conclusion is not weakened, but rather strengthened, by the fact that the legislature did pass a bill making the proposed amendment to section 175, supra, but it did not meet the approval of the Governor, and for that reason did not become a law. But the effort on the part of the legislature tends to show that it was their purpose not to make the appropriation, without the aid of the proposed amendment, serve to restrict the amount required by section 175, supra.

That bill sought to incorporate in section 175, supra, the substance of some of the terms used in section 105, Title 55, supra, as to the governor's emergency fund, but, as we have said, it failed to become a law. That is all the more reason why the appropriation for temporary clerks should expressly limit the appropriation in section 175, supra, if so intended. Moreover, section 105, supra, does not provide in itself an appropriation, so that an appropriation is necessary to be made otherwise for that purpose. Whereas section 175, supra, has in itself an appropriation which was sought to be restricted by the proposed amendment to it, in connection with the general appropriation bill. Without this amendment, the plan as contemplated was not carried out nor effected by the temporary clerk fund provision of the Appropriation Act of 1947.

The appropriation here in question is not set up in terms as a maximum amount, as was done in other features of the Act.

Nor do we think the general terms of section 3 of the Appropriation Act should be held to distinctly and plainly apply to the present situation. It provides that the amounts specifically appropriated shall be in lieu of the amounts heretofore provided or appropriated by law for such purposes. But section 175, supra, does not appropriate an amount for temporary clerk hire, and therefore it is not within the provisions expressed in section 3, supra. It is building an inference on an inference to find that this appropriation refers to section 175, supra, and also that it is distinctly and plainly intended to be the maximum amount usable under section 175, supra, when its terms are not so expressed.

■ By reason of the disqualification of Gardner, C. J., and Livingston, J., the number of justices competent to sit in this case is reduced to five, so that by virtue of Title 13, section 14, the concur-

rence of three justices is sufficient in the determination of this cause.

The judgment of the trial court is affirmed by reason of the concurrence of Brown and Stakely, JJ., with the writer.

Affirmed.

BROWN and STAKELY, JJ., concur.

LAWSON and SIMPSON, JJ., dissent.

GARDNER, C. J., and LIVINGSTON, J., not sitting.

LAWSON, Justice (dissenting).

The majority opinion, if I have correctly interpreted it, concedes that in appropriating $3,500 to the "temporary clerk fund" the legislature in fact appropriated that sum to be expended in accordance with the provisions of § 175, Title 55, Code 1940; that in doing so neither § 71 nor § 45 of the Constitution was violated. With such conclusions I am in accord.

Having concluded as above indicated as to the constitutionality of the appropriation and the purpose for which it was made, the majority then proceed to hold that the $3,500 so appropriated is not all the money in the State treasury that can be used annually for paying the clerks employed under the terms of § 175, Title 55, supra; this for the reason that it does not appear that the legislature intended that the said $3,500 appropriation be in lieu of the unlimited appropriation provided for in § 175, Title 55, supra. I cannot agree with the majority opinion in this respect.

The constitutional questions aside, the one remaining question presented by this appeal is, what did the legislature intend to accomplish by including in the general appropriation bill the appropriation of $3,500 to the "temporary clerk fund"?

If we are correct in our conclusion that the said $3,500 was in fact appropriated for the purpose of being used in the payment of clerks employed in accordance with the provisions of § 175, Title 55, supra, then, to me, the conclusion seems to be inescapable that said sum is the maximum amount of money which may be expended annually from the State treasury for such purpose. If said sum of $3,500 was not intended by the legislature to be a limitation upon the amount of money which could be expended for additional or temporary clerks employed under § 175, Title 55, supra, then for what possible purpose was the said appropriation included in the general appropriation bill? The majority opinion leaves this question unanswered, of necessity, because there is no answer. Certain it is that the legislature cannot be charged with having included this appropriation on the theory that sufficient funds were not available for such purpose, since it seems to be admitted that § 175, Title 55, supra, as written carries an unlimited appropriation. The result is that the majority opinion charges the legislature with having done an entirely useless and futile thing, although it affirmatively appears from the report of the interim committee on finance and taxation, set out in the majority opinion, that said committee recommended that a limitation be placed on the amount of money which could be expended under § 175, Title 55, supra.

The conclusion of the majority seems to be based primarily upon the principle that repeal by implication is not favored and that, therefore, the mere inclusion in said general appropriation bill of a fixed sum cannot be held to operate as a repeal of the unlimited appropriation included in § 175, Title 55, supra. In support of this holding the case of Reynolds v. Taylor, 43 Ala. 420, is cited. That case was construed in the case of Riggs v. Brewer, 64 Ala. 282, as holding as follows: "A subsequent statute, merely appropriating a less sum than that fixed as the salary by the general statute, does not operate a repeal by implication of the latter." With this principle I have no argument, but it has no application here.

It is a familiar canon of statutory construction that "where there is doubt as to the meaning and intent of a statute by reason of the language employed, or arising from the context, courts may look to the history, conditions which lead to that enactment, the material surrounding

circumstances, the ends to be accomplished, and evils to be avoided or corrected, in order that the legislative intent be ascertained and given effect, if possible." Henry v. McCormack Bros. Motor Car Co., 232 Ala. 196, 198, 167 So. 256. To like effect see McCreless v. Tenn. Valley Bank, 208 Ala. 414, 94 So. 722; Prowell v. State ex rel. Hasty et al., 142 Ala. 80, 39 So. 164.

It appears in the majority opinion that the interim committee on finance and taxation found that the unlimited appropriation provided for by § 175, Title 55, was unsound and recommended that any expenditures thereunder be limited "to an amount budgeted from time to time for that purpose in general appropriation bills." When this background is considered in connection with the fact that the appropriation, then is seems clear to me that propriation, then it seems clear to me that the rule of the case of Reynolds v. Taylor, supra, does not control this case, for in that case no such background was before the court.

The legislature included the $3,500 appropriation in the 1947 general appropriation act, which was approved August 15, 1947, to become effective on October 1, 1947.

On June 24, 1947, the Senate passed Senate Bill 85, which was entitled "An Act to amend § 175 of Title 55, Code 1940." This bill was passed by the House on September 30, 1947. It was sent to the Governor on October 2, 1947. It never became law because it received what is generally referred to as a "pocket veto." § 125, Constitution 1901. Said Senate bill was a rewrite of § 175, Title 55, supra, in all material respects except that it deleted therefrom the provisions which had been construed as carrying an unlimited appropriation, and added thereto the following: "The additional clerical assistants provided herein shall be employed subject to the provisions of the merit system, and the payment therefor shall be limited to the specific amount appropriated by the legislature."

The majority seems to concede that the 1947 legislature intended to put a limitation on the amount of money which could be expended annually for additional clerks under § 175, Title 55, supra, but take the position that the legislature intended to bring that result about in two steps: first, by including an appropriation in the appropriation bill; and second, by an amendment to § 175, Title 55, supra; and conclude that since the Governor prevented the last step from being accomplished, it cannot be said that the legislature intended for the appropriation in the appropriation bill to operate as a limitation.

There might be some basis for such a conclusion if Senate Bill 85, supra, had contained a definite appropriation and had not shown on its face that the legislature recognized the fact that the money which was to be available for the employment of clerks under the terms and provisions of § 175, Title 55, was to be limited to the specific amount contained in the general appropriation bill.

The legislature not only sought to put a limitation upon the amount of money which could be expended for the employment of the so-called additional clerks, but also sought to have the employment of such clerks regulated by the merit system laws. The latter change, of course, could not be brought about in the general appropriation act. In order to do so, Senate Bill 85 was passed, and I can see nothing in that bill which can in any wise be construed as justifying the conclusion reached by the majority that the legislative purpose to limit the amount of money available for the employment of the additional clerks was dependent upon the enactment of Senate Bill 85 into law.

What would have been the situation if the Governor had approved Senate Bill 85? In that event, of course, there could have been no doubt of the fact that the said $3,500 was the only money which could be used in connection with § 175, Title 55, supra. This, because if so amended, § 175, Title 55, supra, would have contained language referring to the amount fixed in the general appropriation bill.

But as before indicated, because it did not meet with the Governor's approval, Senate Bill 85 did not become law. But

the action of the Governor does not affect the intention of the legislature and that is the question with which we are here dealing.

I am of the opinion that in including the appropriation of $3,500 in the appropriation bill, the legislature effectively accomplished one of its objectives in so far as § 175, Title 55, was concerned, and that the failure of Senate Bill 85, supra, to be finally enacted into law cannot be said to in any wise defeat that purpose.

But there is a much more cogent reason why the case of Reynolds v. Taylor, supra, does not control here. In the instant case the general appropriation bill carries the $3,500 appropriation in § 1 thereof. § 3 reads as follows: "That, except as may be herein otherwise provided, the amounts herein specifically appropriated shall be in lieu of the amounts heretofore provided or appropriated by law for such purposes." § 7 of the said 1947 general appropriation act is as follows: "That all laws and parts of laws, general, special, private, or local, in conflict with or inconsistent with the provisions of this act, be and the same are hereby expressly repealed." No such provisions were considered in Reynolds v. Taylor, supra.

In the case of Riggs v. Brewer, 64 Ala. 282, it appeared that the salary of the librarian and marshall of this court was fixed by § 586 of the Code of 1876 at $2,000 annually. A subsequent appropriation act contained the following clause: "For compensation of the marshal of the Supreme Court and librarian, $1500 for each year, in all $3,000." § 3 of said appropriation act reads as follows: "That the appropriations made by this act shall not be construed to be in addition to appropriations for the same purposes, or any of them, made by separate acts heretofore or hereafter passed at this session of the General Assembly, or by laws heretofore passed and still in force."

The librarian, Mr. Riggs, took the position that he was entitled to receive annually the sum of $2,000 as fixed by the Code section, rather than the sum of $1,500 as later fixed by the appropriation bill. Upon the auditor's refusal to so pay him, Mr. Riggs instituted mandamus proceedings in the city court of Montgomery to compel the auditor to draw warrants upon the State treasurer in accordance with the terms of § 586 of the Code of 1876. The trial court held that the appropriation act which became effective subsequent to the Code section governed the amount of Mr. Riggs' salary, and therefore dismissed his petition for writ of mandamus. On appeal this court affirmed, saying:

"Statutes may be repealed by implication, or by express legislative enactment; and it is well settled, that a subsequent statute, which is clearly repugnant to, and inconsistent with a former one, operates a repeal of the latter. Or, if the later statute is manifestly and plainly intended to prescribe the only rule that shall govern in reference to the particular matter, it necessarily repeals the prior statute. Sedg. Stat. & Cons.Law, 104. It is true, the doctrine of the repeal of statutes by implication is not favored; and when two statutes are capable of a fair and just exposition, so that the two can stand, that exposition will be adopted, rather than a construction which will render the latter a repeal by implication of the former. Wyman v. Campbell, 6 Port. 219. But, if they are not capable of such exposition, without doing violence to the legislative intent—if there is a manifest repugnancy of the one to the other—the former statute must yield to the last expression of the legislative will. George v. Skeates, 19 Ala. 738.

"Applying these established rules of construction to the case presented by the record, the relator has not the right he asserts. It seems too plain for argument, that the legislative intention was that, for the fiscal years of 1879-80, and until the first day of January, 1881, the salary of the marshal and librarian should be fifteen hundred dollars annually. All that is appropriated for that purpose, and for that period, is three thousand dollars—*in all three thousand dollars,* are the words employed, The fiscal year expires on the 30th day of September. The appropriation is continued of force until the first of January, 1881, as the general assembly would not convene until the preceding second Tuesday in November. Without this provision, or with an appropriation continu-

ing only during the fiscal year, after its expiration, under the general statute, the marshal would have been entitled to a salary of two thousand dollars. To avoid this result, is the purpose of this provision. The last section of the act, declaring that the appropriations thereby made are not to be construed as in addition to former appropriations for the same purposes, points clearly to a legislative intention to exclude all other appropriations. The general statute, fixing the salary at two thousand dollars, can not stand consistently with the later statute, which was doubtless intended as a substitute during the time by its own terms it remains of force. *The obvious difference between this case and that of Reynolds v. Taylor, supra, is that the statute then construed by the court did not contain such a clear and plain intention to take the place of the former statute, as is shown by the act of February 13, 1879."* (Last emphasis supplied). 64 Ala. 285-286.

Chief Justice Brickell wrote the opinion for the court in the case of Riggs v. Brewer. Certain it is that I cannot add to what that great and distinguished jurist has said about the principles involved in that case. I can say, however, that in my judgment those principles are controlling of the instant case. In my opinion, if there can be said to be any distinction between the Riggs case and the instant case, it is that the language of § 3 of the 1947 general appropriation act shows more clearly the legislative intention, to exclude all appropriations other than those included in that act than did the language of § 3 of the appropriation act of 1879 evidence such an intention as to that act.

The majority opinion does not overlook the provisions of § 3 of the 1947 act or the fact that similar provisions contained in the 1879 appropriation act resulted in the conclusion reached in Riggs v. Brewer, supra.

In order to avoid the rule of Riggs v. Brewer, supra, the majority, in my opinion, have placed a most unnatural and strained construction on § 3 of the 1947 appropriation act. Said section reads: "That, except as may be herein otherwise provided, the amounts herein specifically appropriated shall be in lieu of the amounts heretofore provided or appropriated by law for such purposes."

There is a specific amount appropriated in the act to be used to pay additional or temporary clerks employed under § 175, Title 55, supra. Upon that, all the justices taking part in this case seem to agree. There is nothing in the said act to indicate affirmatively that said specific amount is not in lieu of the amounts theretofore provided or appropriated. Then why shouldn't the said $3,500 appropriation be construed as being in lieu of the unlimited appropriation contained in § 175, Title 55, supra?

The majority says that such is not the result because § 175, Title 55, supra, did not appropriate an *amount* (of money) and that § 3 only operates against previous appropriations where "amounts" have been provided or appropriated. In other words, if § 175, Title 55, supra, had appropriated the sum of $1,000,000 for the purpose of paying such additional clerks, then the $3,500 appropriation contained in the 1947 appropriation act would be construed by the majority as being in lieu of the said $1,000,000 appropriation theretofore provided. But since § 175, Title 55, supra, does not appropriate a fixed sum, no such result follows.

If § 175, Title 55, Code 1940, does not appropriate an "amount" of money out of the State treasury, then there has never been any money in the State treasury with which clerks employed thereunder could be paid. Certain it is that said section has never been construed as not appropriating any money. On the other hand, it has been treated administratively and has been considered by the legislature as containing an unlimited appropriation. In other words, it appropriates an unlimited amount of money out of the State treasury.

Actually, the majority opinion writes into § 3 of the 1947 appropriation act words that are not there. For instance, it has the effect of making said § 3 read as follows: "That, except as may be herein otherwise provided, the amounts herein specifically appropriated shall be in lieu of the [fixed, definite, or certain] amounts heretofore provided or appropriated by law for such purposes."

I cannot agree that § 3 of the 1947 appropriation act should be construed to apply only where the former appropriation was for a definite or fixed amount and not where it was unlimited. There is no basis for such construction and the result is to charge the legislature with having incorporated in the 1947 appropriation act a provision which is entirely unnecessary and without effect.

After all, we are confronted with a practical problem and it should be viewed from a common-sense standpoint. The provisions of the 1947 appropriation act need not be interpreted alone by the words abstractly considered, but by the language used read in the light of the conditions in which the provisions originated and in view of the purposes sought to be accomplished. When this is done, I am at a loss to understand the conclusion reached by the majority.

It is with regret that I find myself compelled to dissent from my brothers in this case. But I feel strongly that the majority opinion has in effect cast aside decisions of this court which have stood for many years. I have particular reference to the cases of Riggs v. Brewer, supra, and Owen v. Beale, 145 Ala. 108, 39 So. 907.

I am of the opinion that the decree of the trial court should be reversed and that a decree should be rendered here declaring that since the effective date of the 1947 appropriation act only the sum of $3,500 has been available annually for the payment of clerks employed under and in accordance with the terms and provisions of § 175, Title 55, Code 1940.

SIMPSON, J., concurs in these views.