On Application for Rehearing
The opinion of November 2, 2001, is withdrawn and the following is substituted therefor.
In July 1997, Thompson Properties, 119 AA 370, Ltd., and Thompson Properties, 123 AA 370, Ltd. (hereinafter referred to collectively as "the Partnerships"), filed an action against Eastern Valley Trading Company, Inc. ("Eastern Valley"), and Birmingham Hide Tallow Company, Inc. ("Birmingham Hide"), pursuant to the Alabama Uniform Fraudulent Transfer Act ("AUFTA"), §§ 8-9A-1 through -12, Ala. Code 1975, seeking to set aside as fraudulent certain transfers of real property. The complaint alleged that Ron Rockhill, who was Eastern Valley's president and its sole shareholder at the time, had transferred to Birmingham Hide property held in the name of Eastern Valley, with the intent to frustrate the claims of Rockhill's creditors, including the Partnerships. The complaint further alleged that when the property was transferred from Eastern Valley to Birmingham Hide, Eastern Valley was the "alter ego and [a] mere instrumentality" of Rockhill. In addition, the complaint alleged that Eastern Valley and Birmingham Hide conspired to defraud Rockhill's creditors.
Birmingham Hide denied the material allegations of the complaint and asserted, as an affirmative defense, that it was a bona fide purchaser for value of the real property in question. Eastern Valley, a named codefendant in the complaint, failed to answer. The Partnerships moved for a default judgment as to Eastern Valley, asking the trial court to declare that, at the time the property was transferred, Eastern Valley was the alter ego of Rockhill and that Eastern Valley was liable for judgments totaling over $400,000 that had been entered in favor of the Partnerships and against Rockhill in an action initiated in 1990.
The trial court entered the default judgment against Eastern Valley. The trial court then certified the default judgment as final under Rule 54(b), Ala.R.Civ.P. No party appealed the default judgment.
The case proceeded with respect to the Partnerships' remaining claims. The Partnerships moved for a summary judgment against Birmingham Hide, arguing that there were no genuine issues of material fact as to their allegations of fraudulent transfer and conspiracy to defraud and that the Partnerships were entitled to a judgment as a matter of law. Birmingham Hide subsequently moved for a summary judgment.
On October 17, 2000, the trial court entered a summary judgment against the Partnerships and in favor of Birmingham Hide and denied the Partnerships' motion for a summary judgment. The Partnerships appeal, contending that the trial court erred in granting Birmingham Hide's motion for a summary judgment. We reverse and remand.
At all times material to this action, Rockhill was the president and the sole *Page 631 
shareholder of Eastern Valley. In 1988, Rockhill acquired the following properties in the name of Eastern Valley: (1) a house in the Quail Run subdivision of Shelby County; (2) a beachfront condominium in Panama City, Florida; and (3) a vacant lot in a subdivision of Vestavia Hills in Jefferson County. The total purchase price of these properties (hereinafter referred to collectively as "the Eastern Valley Properties") was $316,000. At the time the properties were purchased, most of Rockhill's assets were held in the name of Eastern Valley. Following the purchase, Rockhill resided in the home in the Quail Run subdivision and used the Panama City condominium.
In 1990, the Partnerships sued Rockhill in the Jefferson Circuit Court, alleging fraud and breach of fiduciary duty. The Partnerships contended that Rockhill, who had formerly been a general partner in the Partnerships, had misappropriated the Partnerships' funds.[1] In November 1990, the trial court entered judgments totaling over $400,000 in favor of the Partnerships and against Rockhill on the Partnerships' claims of fraud and breach of fiduciary duty.
Following the entry of those judgments, Rockhill filed a petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama. Because title to the Eastern Valley Properties was held in the name of Eastern Valley, those Properties were not identified as assets in Rockhill's bankruptcy-petition schedule. Nor were the Properties disclosed to the bankruptcy court or to the Partnerships. In May 1993, the bankruptcy court entered a judgment declaring $113,760.51 of the November 1990 judgments against Rockhill to be exempt from discharge as to the Partnerships.
Forty-two days after the bankruptcy court entered the judgments declaring a portion of the prior judgments against him to be exempt from discharge, Rockhill, acting through Eastern Valley, sold the Eastern Valley Properties to Birmingham Hide, for $194,000. The deeds evidencing the conveyance of the Eastern Valley Properties to Birmingham Hide were signed by Rockhill as the president of Eastern Valley. Evidence indicated that Rockhill used the $194,000 to settle litigation in a separate, unrelated lawsuit brought against Rockhill and Eastern Valley based on other allegedly improper business dealings by Rockhill.
The Partnerships presented evidence indicating that after the sale of the Eastern Valley Properties to Birmingham Hide, Rockhill continued to reside in the house in the Quail Run subdivision without paying rent to Birmingham Hide.[2] In addition, Rockhill continued to use the Panama City condominium, rent-free. The evidence also showed that in July 1995, after Birmingham Hide sold two of the Eastern Valley Properties (the house in the Quail Run subdivision and the vacant lot in Vestavia Hills) to bona fide purchasers,[3] *Page 632 
Birmingham Hide paid Rockhill $39,650 from the sale proceeds. Birmingham Hide made the $39,650 check payable to Rockhill, rather than to Eastern Valley. Owen Vickers, president of Birmingham Hide, testified by deposition that the payment was for Rockhill's "undocumented interest" in the Eastern Valley Properties.[4] Evidence was presented indicating that Rockhill and Birmingham Hide had agreed at the time the Eastern Valley Properties were conveyed to Birmingham Hide that Rockhill would share in any net gains that might be realized when Birmingham Hide later resold the properties.
When the Partnerships learned about the circumstances surrounding the transfer of the Eastern Valley Properties, they filed this action pursuant to the AUFTA, alleging that Rockhill had transferred, or caused to be transferred, to Birmingham Hide the property with the intent to place those assets beyond the reach of the Partnerships, which held judgments against Rockhill, a portion of which the bankruptcy court had declared nondischargeable. The Partnerships alleged that Eastern Valley, which held title to the Eastern Valley Properties, was the alter ego of Rockhill when the property was transferred to Birmingham Hide and that Eastern Valley and Birmingham Hide had conspired to defraud the Partnerships. The Partnerships sought a judgment setting aside the transfer of the Panama City condominium — the only Eastern Valley Property still held by Birmingham Hide at the time — and awarding such other relief as might be appropriate.
The AUFTA, §§ 8-9A-1 through -12, Ala. Code 1975, provides that certain transfers "made by a debtor" may be found void or voidable as to creditors. The purpose of the AUFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach. Under § 8-9A-4(a), Ala. Code 1975, "[a] transfer made by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." "Transfer" is defined at § 8-9A-1(13), Ala. Code 1975, as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payments of money, release, lease, and creation of a lien or other encumbrance." "Debtor" is defined at §8-9A-1(6) as "[a] person who is liable on a claim." "Creditor" is defined at § 8-9A-1(4) as "[a] person who has a claim." "Claim" is defined at § 8-9A-1(3) as "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and specifically shall include the nonpayment of child support pursuant to a court order." *Page 633 
In entering the summary judgment in favor of Birmingham Hide, the trial court stated that it was relying on Folmar Associates LLP v. Holberg,776 So.2d 112 (Ala. 2000), in which this Court held that the AUFTA applies only to transfers "by a debtor." The trial court concluded that the transfer of property to Birmingham Hide was not a transfer "by a debtor" within the language of the AUFTA because, at the time of the transfer, the property was held in the name of Eastern Valley rather than in the name of Rockhill, the Partnerships' judgment debtor.
The Partnerships argue that when the property was transferred from Eastern Valley to Birmingham Hide, Eastern Valley was the "alter ego and [a] mere instrumentality" of Rockhill and that consequently, for purposes of the AUFTA, Eastern Valley was Rockhill and was, therefore, a "debtor."
The standard by which this Court will review a motion for summary judgment is well established:
 "The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); § 12-21-12(d)[,] Ala. Code 1975. Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 "In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999).
It is undisputed that at the time the Eastern Valley Properties were transferred to Birmingham Hide, Rockhill was a debtor of the Partnerships, by virtue of the prior judgments in the Partnerships' favor against Rockhill that the bankruptcy court had declared nondischargeable. Moreover, notwithstanding the trial court's ruling — which formed the basis of its summary judgment in favor of Birmingham Hide — that Eastern Valley was not, for purposes of the AUFTA, a debtor of the Partnerships when the transfer occurred, we conclude that Eastern Valley was, for purposes of the AUFTA, a "debtor" at the time of the transfer, by virtue of the default judgment entered against Eastern Valley, in which the trial court declared that, at the time of the transfer, Eastern Valley was the alter ego and a mere instrumentality of Rockhill and that Eastern Valley was liable to the Partnerships for the judgments the bankruptcy court determined to be nondischargeable. The trial court certified the default judgment as final, and no party appealed the default judgment. Because of the trial court's declaration that Eastern Valley was the alter ego and a mere instrumentality of Rockhill, it did not recognize Eastern Valley as an entity separate and apart from Rockhill. See Southern Sash Sales *Page 634 Supply Co. v. Wiley, 631 So.2d 968, 970 (Ala. 1994); Forest HillCorp. v. Latter Blum, Inc., 249 Ala. 23, 28, 29 So.2d 298, 302
(1947). For purposes of the AUFTA, then, Eastern Valley and Rockhill could be considered "one and the same" at the time of the transfer. Thus, the transfer of the Eastern Valley Properties to Birmingham Hide was a transfer "made by a debtor" under the language of the AUFTA.
Birmingham Hide argues that it is not bound by the trial court's judgment declaring that Eastern Valley was the alter ego and a mere instrumentality of Rockhill at the time of the transfer. Consequently, Birmingham Hide says, Eastern Valley is not a "debtor" for purposes of the Partnerships' claims under the AUFTA. However, even absent the trial court's declaration that Eastern Valley was the alter ego and a mere instrumentality of Rockhill, the Partnerships presented sufficient evidence to establish a genuine issue of material fact as to whether the transfer of the Eastern Valley Properties to Birmingham Hide was a transfer made by a debtor. For instance, the Partnerships presented evidence indicating that when the property was transferred to Birmingham Hide, Rockhill retained an "undocumented interest" in the property, for which, pursuant to an agreement made at the time the property was conveyed to Birmingham Hide, Rockhill was paid by Birmingham Hide after the property was resold to bona fide purchasers. The deeds evidencing the conveyance to Birmingham Hide of the Eastern Valley Properties — in which Rockhill retained the "undocumented interest" — were signed by Rockhill. If, as the evidence indicated, the transfer included Rockhill's undocumented interest, the transfer was one "made by a debtor."
The trial court incorrectly relied on Folmar Associates LLP v.Holberg, 776 So.2d 112 (Ala. 2000), in entering the summary judgment for Birmingham Hide. As we have noted above, because the trial court determined that Eastern Valley was the alter ego and a mere instrumentality of Rockhill when the Eastern Valley Properties were transferred to Birmingham Hide, the transfer was, for purposes of the AUFTA, "made by a debtor." Therefore, the holding in Folmar does not control this case. Moreover, the transfers in Folmar involved loans to a debtor by a third party, not, as in the present case, a transfer of property by an entity that was the debtor's alter ego and was therefore legally the debtor. Thus, we hold that the trial court erred in granting Birmingham Hide's summary-judgment motion.
The Partnerships have also argued that the trial court erred in denying their motion for a summary judgment as to their allegations of fraudulent transfer and conspiracy to defraud. The denial of a motion for summary judgment is not an appealable order, except by permission obtained pursuant to Rule 5, Ala.R.App.P. See Nationwide Prop. Cas. Ins. Co. v.DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000); Superskate, Inc.v. Nolen, 641 So.2d 231, 233 (Ala. 1994). The Partnerships neither sought nor obtained permission to appeal under Rule 5 with respect to the denial of that summary-judgment motion. Therefore, we do not address the merits of the Partnerships' claim that the trial court erred in denying their motion for a summary judgment.
For the reasons stated above, the trial court erred in granting Birmingham Hide's motion for a summary judgment. Therefore, the summary judgment in favor of Birmingham Hide and against the Partnerships is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.
APPLICATION OVERRULED; OPINION OF NOVEMBER 2, 2001, *Page 635 
WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE, J., recuses himself.
[1] The lawsuit was unrelated to Rockhill's purchase of the Eastern Valley Properties.
[2] Although Rockhill and Birmingham Hide executed a written lease, pursuant to which Rockhill purportedly leased the residence from Birmingham Hide, it was undisputed that Rockhill defaulted on his rental payments and that he continued to reside in the house for 21 months without paying rent.
[3] As the Partnerships note in their brief to this Court, those sales occurred after Rockhill's personal bankruptcy had concluded. The evidence indicates that the purchase price Eastern Valley/Rockhill had paid for the house in the Quail Run subdivision in 1988 was $120,931.50; that Birmingham Hide paid Eastern Valley/Rockhill $78,000 for that house in 1993; and that the price Birmingham Hide received in 1994 upon resale of the house to a bona fide purchaser was $139,9000. The evidence also indicates that Eastern Valley/Rockhill paid $69,628 for the vacant lot in Vestavia Hills in 1988; that the price Birmingham Hide paid Eastern Valley/Rockhill for that lot in 1993 was $56,727.27; and that the price Birmingham Hide received upon resale of the lot to a bona fide purchaser in 1995 was $71,900.
[4] There was conflicting testimony regarding the purpose of the $39,650 payment to Rockhill. Harry Vickers, who, with Owen Vickers, co-owned Birmingham Hide, testified that the payment was a "gift" to Rockhill. Mike Glenn, Birmingham Hide's chief financial officer and vice president, testified that he treated the payment as a "real estate commission" to Rockhill — even though Rockhill was not a licensed real estate agent and had never sold any property for Birmingham Hide. Rockhill testified that the payment was made to his wife for landscaping services his wife and son had allegedly performed for Birmingham Hide.